UNITED STATES DISTRICT COURT
EASTERN DISTRICT Of MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLINE MEEKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:05CV1779 HEA |
| | ) | |
| LINCOLN INDUSTRIAL | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the court on Defendants, Lincoln Industrial Corporation ("Lincoln") and UAW Local 691 ( "the Union"), Motions for Summary Judgment, [ Doc. No.'s 47 and 44, respectively ]. Plaintiff opposes these motions and has filed written responses thereto. Defendants filed their replies and the matter is therefore fully briefed. For the reasons set forth below, the Motions for Summary Judgment are granted.

### **Introduction**

Plaintiff brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000*e et seq*. On October 4, 2005, Plaintiff filed suit *pro se* against

Lincoln alone alleging race discrimination, sex discrimination[1] and retaliation. On February 10, 2006 Plaintiff filed suit *pro se* against the Union alleging discrimination. On April 25, 2006, the Court granted Defendant Lincoln's motion to consolidate the two suits.

## Facts and Background

Lincoln manufactures lubrication systems. Plaintiff's first job at Lincoln was as an Assembler in the injector department. On January 14, 2004, Plaintiff was awarded a bid and accepted a position as a Stores Attendant "A" in the shipping department. Plaintiff's wages increased from $13.16 an hour to $ 14.08 an hour.

Plaintiff alleges that her supervisor, Terry Tenholder ("Tenholder"), required her to do heavy manual lifting on jobs within the Stores Attendant "A" classification and refused to rotate her among various positions within her job classification. Plaintiff testified at her deposition that her supervisor's actions were discriminatory and/or retaliatory and that her supervisor's actions violated Title VII. Moreover, Plaintiff testified that the only reason she brought a discrimination claim was because she was the only black woman in her department. (Meeks Depo p. 336).[2]

---

[1] Plaintiff's sex discrimination claim was dismissed because she did not include it in her March 22, 2005 Charge of Discrimination with the EEOC.

[2] This statement is not true (P Dep. Ex. T). Plaintiff's niece, Donna Ussery, was also employed in the department. ( Tenholder Affidavit ¶ 10; Ex. T).

In addition, Plaintiff avers that the union did not represent her fairly when she complained about the heavy lifting and her supervisor's failure to rotate her, because of her race.

The Defendants assert that the Stores Attendant "A" job is physically demanding and requires constant lifting and bending, as such this position pays a higher hourly wage than most of the other union jobs in the plant. Furthermore, in his deposition, Defendant's witness Frankie Graham testified that when employees go into the Shipping Department as a Stores Attendant "A," it is expected that they will be doing a lot of physical work.

In August of 2004, Plaintiff complained to her District Steward Don Ackerson ("Ackerson") about heavy lifting and not being rotated off of the UPS line to other jobs within her classification. Plaintiff told Ackerson that she believed that Tenholder's refusal to rotate her was racially motivated.[3] Ackerson informed Plaintiff that there was nothing in the CBA which required Tenholder to rotate plaintiff. On the same day of Plaintiff's complaint, Ackerson met with Tenholder and advised him of Plaintiff's complaints. Tenholder told Ackerson that Plaintiff was not required to do heavy lifting on her own, and that she could inform

---

[3]When Plaintiff made this complaint to Ackerson there were other black Stores Attendant "A"'s who were regularly rotated between various Stores Attendant "A" assignments by supervisor Tenholder. ( Affidavit of Ackerson ¶ 10).

Tenholder that she needed help and that he would assign her a co-worker to help her lift. With respect to rotation, Tenholder stated that he wanted to keep Plaintiff on the UPS line because she was doing a good job and also stated that nothing in the CBA required him to rotate his workers. Ackerson informed Plaintiff of Tenholder's statements. Plaintiff made no request at that time or at any later date to file a formal grievance on her behalf about the lifting complaint or the complaint about Tenholder's failure to rotate her.

Later, in August of 2004, Plaintiff complained to Chief Shop Steward, Bill Walker ("Walker"), about Tenholder's refusal to rotate her. Walker talked to Tenholder about the situation and Tenholder told Walker that he liked the job that Plaintiff was doing on the line and that the company policy did not require him to rotate plaintiff.

On September 9, 2004, Plaintiff complained to the union President Brenner ("Brenner") and Walker. Plaintiff said that she was being discriminated against because Lincoln had not trained her on the material handling equipment used in the Shipping Department. Brenner contacted Lincoln's Vice President of Human Resources, Al Adams, and a meeting was held that afternoon. At the meeting, Tenholder informed Plaintiff that if she were asked to do heavy lifting she could contact him and he would assign that work to another employee. Tenholder also

informed Plaintiff that there was no obligation to rotate her under the CBA and that he liked the job that she was doing on the UPS line. During the meeting Tenholder also stated that he would arrange for the Plaintiff, as well as other employees, to receive training on the equipment. After the meeting, Brenner and Walker informed Plaintiff that there was nothing in the CBA which required Tenholder to rotate Plaintiff and told her that she could bid for another job if she continued to be unhappy with her position. In October of 2004, Plaintiff and the entire shipping department were trained on the material handling equipment.

## Discussion

The standards for summary judgment are well settled. In determining whether summary judgment should be issued, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Employers Mut. Cas. Co. v. Wendand & Utz, Ltd.*, 351 F.3d 890, 893 (8th Cir. 2003); *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party has the burden of establishing both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enter. Bank*, 92 F.3d at 747. Once the moving

party has met this burden, the nonmoving party may not rest on the allegations in his pleadings, but, by affidavit or other evidence, must set forth specific facts showing that a genuine issue of material fact exists. FED.R.CIV.P. 56(e); *Anderson*, 477 U.S. at 356; *Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putnam v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

To establish a *prima facie* case for Title VII race based discrimination a plaintiff must prove the following elements: (1) she was a member of a protected group, (2) she was meeting the legitimate expectations of her employer, (3) she suffered an adverse employment action, and (4) there are facts that permit an inference of discrimination. *Canady v. Wal-Mart Stores Inc.,* 440 F.3d 1031, 1034 (8th Cir. 2006) (citing *Zhuang v. Datacard Corp.,* 414 F.3d 849, 854 (8th Cir. 2005).

In the present case, plaintiff can not establish that she suffered an adverse employment action nor has she shown any facts that would permit an inference of

discrimination. An adverse employment action is "a tangible change in working conditions that produces a material employment disadvantage." *Reynolds v. Ethicon Endo-Surgery, Inc.,* 454 F.3d 868, 872 (8th Cir. 2006); *Spears v. Missouri Dept. Of Corrections and Human Resources,* 210 F.3d 850, 853 (8th Cir. 2000). "Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not." *Spears,* 210 F.3d at 853.

Plaintiff has not shown that she has experienced a change in duties or working conditions. Plaintiff has not been demoted, suspended, disciplined or terminated. Plaintiff's wages were increased instead of reduced and plaintiff did not lose seniority. The jobs that fall within Stores Attendant "A" classification require heavy lifting and a lot of bending. Plaintiff's dissatisfaction with Tenholder's failure to rotate her and the requirements of her job do not constitute adverse employment action.

With respect to the fourth element, Plaintiff has not shown any facts that would permit an inference of discrimination. Plaintiff "may prove the fourth element by showing that similarly situated employees, who are not black, were

treated differently." *Wheeler v. Aventis Pharmaceuticals,* 360 F.3d 853, 857 (8th Cir. 2004).

Here, Plaintiff has not provided any evidence to show that similarly situated Stores "A" Attendants were treated more favorably than Plaintiff. Plaintiff stated that the only reason that she brought this discrimination claim was because she was the only black woman in her department (Meeks Depo p. 336). Plaintiff's deposition reveals that no other individuals were treated more favorably than Plaintiff. Plaintiffi is merely dissatisfied with the way Tenholder ran the department. (See Meeks Depo. p. 41-42). Because Plaintiff has not identified one person who was similarly situated but treated more favorably than Plaintiff, she has failed to meet her burden of proof with respect to her *prima facie* race discrimination case. Because plaintiff can not show an adverse employment practice nor any facts that would permit an inference of discrimination, defendant's motion for summary judgment with respect to discrimination is granted.

In addition, Plaintiff filed a retaliation complaint against Lincoln. To establish a retaliation claim "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern and Santa Fe Ry. Co. v. White,* the 548 US

___, 126 S.Ct 2405, 2415 (2006).(internal citation omitted). Here plaintiff has offered no evidence to show that a reasonable person would have found the challenged action materially adverse. According to the facts, the challenged actions are Tenholder's refusal to rotate plaintiff from the UPS line and Plaintiff being required to do heavy lifting. A reasonable person would not have found the challenged actions to be materially adverse: First, the job description for Stores Attendant "A" specifically states that it is a physically demanding job which carries with it a corresponding higher pay rate. Second, the record indicates that all of the assignments within the Stores Attendant "A" involve heavy continuous lifting. Third, there was no requirement for Tenholder to rotate any employee from the UPS line. Fourth, Plaintiff was never dissuaded from complaining about her assignment to the UPS line or her lack of rotation. Based on these facts, Plaintiff has failed to prove that the alleged actions would dissuade a reasonable person from making a claim of discrimination. Moreover, to prove a causal connection between Plaintiff's assignment to the UPS line and her complaints about race discrimination, Plaintiff must show that Tenholder's decision to assign her to the UPS line was made <u>after</u> she made her complaint of race discrimination to the union. The facts clearly establish that Tenholder's decisions to place Plaintiff on the UPS line and not to rotate her were made before Plaintiff complained to the union. Because Plaintiff has

failed to show any facts that would support a claim of retaliation, Lincoln's motion for summary judgment is granted with respect to this claim.

Plaintiff also alleges that the union did not fairly represent her because of her race. In *Air Line Pilots Ass'n, Itern. v. O'Neill,* the Supreme Court held that a union breaches its duty of fair representation if its actions are either "arbitrary, discriminatary or in bad faith. " 499 U.S. 65, 67 (1991)(citing *Vaca v. Sipes,* 386 U.S. 171, 190 (1967). A union acts arbitrarily if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside of a wide range of reasonableness." *Id.* ( citing *Ford Motor Co. V. Huffman,* 345 U.S. 330, 338 (1953).

Here the union did not act arbitrarily, discriminatory, or in bad faith. In fact, a review of Plaintiff's memorandum in opposition to Defendants' summary judgment motions reveals that Plaintiff has abandoned her claim of racial discrimination against the union. Page two of plaintiff's memorandum states "This case is not about black and white but job discrimination retaliation and mental abuse. " (see Doc. No. 50). Moreover, even if plaintiff did not abandon her claim of discrimination against the union, there are no facts to support Plaintiff's claim that the union did not represent the Plaintiff fairly because of her race. For instance, each time Plaintiff complained to the union stewards, Ackerson and Walker, they

timely addressed Plaintiff's issue by talking to her immediate supervisor, Tenholder. In addition, when Plaintiff complained about inadequate training the union president held a timely meeting and Plaintiff as well as other employees were provided with training in October of 2004. The union's actions were clearly not so far outside of a wide range of reasonableness. The union's motion for summary judgment is granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Lincoln's motion for summary judgment [Doc. No 47] is granted.

**IT IS FURTHER ORDERED** that Defendant UAW Local 691 motion for summary judgment [Doc. No 44] is granted.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 25th day of April, 2007.

_____
  HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE